UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                   :

SAMUEL COHEN,                           :
                                   :
             Plaintiff,         :
                                   :            21-CV-5324 (JMF)
      -v-                        :
                                   :      MEMORANDUM OPINION
CME GROUP INC. SEVERANCE PLAN et al.,   :        AND ORDER
                                 :
            Defendants.      :
                                 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this case, familiarity with which is presumed, Samuel Cohen brings claims against

CME Group Inc. and related parties under the Employee Retirement Income Security Act, 29

U.S.C. § 1001 et seq. ("ERISA").  In particular, Cohen alleges that he is entitled to a severance

payment under the employee benefits plan (the "Plan") that CME Group administered for his

former employer, ENSO Financial Management ("ENSO").  Whether Cohen is entitled to such a

payment turns largely, if not entirely, on whether ENSO terminated him (in which case he would

be entitled to severance) or he resigned (in which case he would not).  *See* ECF No. 34-14 ("Pl.'s

Mem."), at 1; ECF No. 35 ("Defs.' Opp'n"), at 2.  Now pending is Cohen's motion to compel

Defendants to produce additional discovery, namely (1) discovery outside the administrative

record in the form of five depositions; and (2) documents created after October 2019 that

Defendants claim are privileged or otherwise protected.  Pl.'s Mem. 5, 12.  For the reasons that

follow, Cohen's motion is granted in part and denied in part.

## DISCUSSION

      The Court begins with the standard of review for the denial of benefits, as it is relevant to

the discovery-related disputes at issue here.  The Supreme Court has held that "a denial of

benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit

plan gives the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

101, 115 (1989); *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 738 (2d

Cir. 2001) ("[W]here a plan does confer discretion upon the administrator to determine eligibility

or interpret the terms of the plan, the determinations of the administrator are reviewed under an

abuse of discretion standard."); *accord Feltington v. Hartford Life Ins. Co.*, No. 14-CV-6616

(GRB) (AKT), 2021 WL 2474213, at *6 (E.D.N.Y. June 17, 2021).  Here, the plain terms of the

Plan, included in the administrative record, *see* ECF Nos. 34-2, 34-3, 34-4 ("Admin. Rec."), at 2,

vest "full and exclusive discretionary authority" in the plan's administrator to, among other

things, "construe and interpret the provisions of the Plan" and "determine eligibility for and the

amount of Severance Benefits . . . for any Employee, as well as all other questions relating to the

eligibility, benefits, and other rights of Employees under the Plan," *id*. at 9.[1]  Accordingly, at

least for purposes of this motion, the Court assumes that the abuse of discretion standard will

apply to the ultimate issues in the case.  *Cf. Feltington*, 2021 WL 2474213, at *7.

## A.  Discovery Beyond the Administrative Record

Cohen's first request is for discovery beyond the administrative record.  "In an ERISA

case, the Court's review is ordinarily limited to the administrative record that was before the plan

administrator when it made its benefit determination."  *Hughes v. Hartford Life & Accident Ins.*

*Co.*, 507 F. Supp. 3d 384, 389 (D. Conn. 2020); *accord Miller v. United Welfare Fund*, 72 F.3d

---

[1]    In his Complaint, Cohen alleges that "the Court should review the decision to deny
Plaintiff severance benefits under a *de novo* standard."  Compl. ¶ 40.  But "the tenet that a court
must accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), which includes the applicable
standard of review.  Accordingly, the Court ignores that allegation in the Complaint.

1066, 1071 (2d Cir. 1995).  A court may look beyond the administrative record only if there is "good cause" to do so.  *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016).  One "example of 'good cause' warranting the introduction of additional evidence" is "[a] demonstrated conflict of interest in the administrative reviewing body." *DeFelice v. Am. Int'l Life Assurance Co*., 112 F.3d 61, 67 (2d Cir. 1997).  The standard for *discovery* beyond the administrative record, however, is lower than good cause and for good reason.  As one court explained, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery."  *Anderson v. Sotheby's Inc. Severance Plan*, No. 04-CV-8180 (SAS) (DFE), 2005 WL 6567123, at *6 (S.D.N.Y. May 13, 2005).  Courts in this Circuit appear to disagree about the relevant standard,[2] but the Court need not wade into that debate here because the parties agree that a party "satisfies his burden of establishing the necessity of additional discovery if he shows there is a conflict of interest *and '*some additional factor,' such as lack of established criteria for determining an appeal, a practice of destroying or discarding records . . . , or a failure to maintain written procedures for claim review.'"  Defs.' Mem. 8 (quoting *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-CV-8210 (RA), 2015 WL 736117, *8 n.8 (S.D.N.Y.

---

[2]     Many courts have held that, "at the discovery stage, the plaintiff . . . must show a reasonable chance that the requested discovery will satisfy the good cause requirement."  *Garban v. Cigna Life Ins. Co. of New York*, No. 10-CV-5770 (JGK) (RLE), 2011 WL 3586070, at *2 (S.D.N.Y. Aug. 11, 2011); *accord Hughes*, 507 F. Supp. 3d at 389 (collecting cases).  Others have found that such a "special standard to govern ERISA cases is 'unwarranted,'" *Liyan He v. Cigna Life Ins. Co. of New York*, 304 F.R.D. 186, 189 (S.D.N.Y. 2015), and applied the "ordinary discovery standard of allowing plaintiff to obtain any 'relevant' evidence that 'appears reasonably calculated to lead to the discovery of admissible evidence,'" *Joyner v. Cont'l Cas. Co.*, 837 F. Supp. 2d 233, 241 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 26(b)(1)).

Feb. 20, 2015) (internal quotation marks omitted)); *see also* Pl.'s Mem. 10 (quoting the same language).  Accordingly, the Court assumes without deciding that that is the applicable standard.

It is well established that "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion."  *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (explaining that where an administrator "both funds the plan and evaluates the claims," there exists an inherent conflict of interest because "every dollar provided in benefits is a dollar spent").  The Second Circuit has held, however, that "a conflicted administrator does not *per se* constitute good cause, and [has] caution[ed] district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause."  *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 296 (2d Cir. 2004).  Moreover, "courts distinguish between discovery relating to the conflict and discovery into the substantive merits of a claim, generally holding that the latter is impermissible in an ERISA case."  *Hughes*, 507 F. Supp. 3d at 400 n.7 (internal quotation marks omitted); *see also, e.g.*, *Murphy v. First Unum Life Ins. Co.*, No. 15-CV-820 (SJF) (SIL), 2016 WL 526243, at *5 (E.D.N.Y. Feb. 9, 2016) ("[C]ourts have permitted discovery relating to the conflict, since much of the relevant information would not have been part of the administrative record, but not discovery into the substantive merits of the claim." (cleaned up)).

Applying these standards here, the Court concludes that some, but not all, of the extra-record discovery Cohen seeks is warranted.  For starters, it appears that Defendants do "both evaluate[] claims for benefits and pay[] benefits claims," creating a structural conflict of interest. ECF No. 38 ("Pl.'s Reply"), at 4; Defs.' Opp'n 4; *see also Locher*, 389 F.3d at 295 (explaining

that "claims reviewers and payors are almost always either the same entity or financially connected in some other way"). Additionally, Cohen contends that the administrative record shows that the "benefits determination was tainted by the plan administrator's conflict of interest," *Feltington*, 2021 WL 2474213, at *8, and provides some, albeit preliminary, evidence in support of that contention, *see* Pl.'s Mem. 10-11. Most compellingly, Cohen points to notes of interviews conducted by Emmanuela Bowman, a representative of Defendants assigned to investigate Cohen's appeal, in which she asked witnesses leading questions, lending credence to the notion that the purpose of the interview was to gather support for denial of the severance rather than to investigate the claim with an open mind. Pl.'s Mem. 1, 11. According to the notes, Bowman started each interview by explaining that "Sam Cohen is disputing the circumstances surrounding his resignation last December" and concluded by asking each witness, "Is there anything else you can think of that would show he voluntarily resigned rather than was terminated?" Admin. Rec. 58-64, 68-72, 74-81. For these purposes, that is sufficient to support Cohen's contention that Bowman may have allowed the conflict of interest to influence her investigation and "[i]t logically follows that some amount of discovery is necessary, to enable the Court to determine the extent and nature of the conflict and the appropriate weight to give this conflict in the ultimate merits analysis, *i.e.*, to enable the Court to determine whether the administrator's conflict of interest affected the reasonableness of the administrator's benefits decision." *Feltington*, 2021 WL 2474213, at *8 (cleaned up); *see also, e.g.*, *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 397 (S.D.N.Y. 2012) (permitting "additional discovery" where the plaintiff's "allegations are sufficiently specific to suggest that [the defendant's] conflict may have affected its decision on [the plaintiff's] claim").

That said, given that any extra-record discovery must be limited to the alleged conflict, not the merits of the plaintiff's claim, and given the "significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures," *Lochner*, 389 F.3d at 295, the Court will limit discovery, *see, e.g.*, *Durham*, 890 F. Supp. 2d at 398; *Joyner*, 837 F. Supp. 2d at 242-43.   In particular, the Court grants Cohen leave to depose two of the witnesses he seeks to depose: first, a representative designated by CME, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, with "knowledge of the claim and appeal process," Pl.'s Mem. 12; and second, one of the three witnesses whom Bowman interviewed. Cohen's request to conduct the deposition of a "witness with knowledge of Defendants' policies regarding terminations and resignations," *id.*, is denied, as it goes to the merits of the claim determination, and his request to depose the other two interviewees is denied without prejudice to renewal if, after taking the depositions, Cohen is able to establish additional facts suggesting a conflict of interest and that a deposition of the other two interviewees is warranted.

## B.  Documents Withheld on Privilege or Work Product Grounds

Cohen's other request is for documents that Defendants have withheld pursuant to the attorney-client privilege and/or work product doctrine.  Defendants have already produced documents created before October 2019 that they initially withheld on the basis of the attorney-client privilege, acknowledging that the "fiduciary exception" prevents the assertion of attorney-client privilege in ERISA cases, at least where the purpose of the communication "concerns exercise of fiduciary duties in the administration of the benefits plan."  *McFarlane v. First Unum Life Ins. Co.*, 231 F. Supp. 3d 10, 16 (S.D.N.Y. 2017).  But the administrative record, which Defendants created, "consists of the documents before the claims administrator when the decision regarding benefits was made," *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d

481, 505 (S.D.N.Y. 2015), and contains substantial material generated after October 2019.

Specifically, on June 5, 2020, Defendants sent Cohen a letter confirming that "CME will accept

an appeal . . . to the Initial Benefit Determination within 60 day[s] from this letter."  Admin. Rec.

177.  Thereafter, Cohen submitted additional documentation, Admin. Rec. 268-291, and, on

October 1, 2020, in a letter titled "Final Decision on Severance Benefits Claim," Defendants

informed Cohen that "[b]ased on a review of your written claim and appeal, . . . [t]he denial of

your claim is a Final Decision under Section 5.6(b) of the Plan."  Admin. Rec. 294-305; *see also*

*id* at 294 ("Please accept this letter as the Final Decision on your appeal from the adverse

determination on your benefit claim.").  Whether or not Defendants were required to accept this

final appeal — a merits issue that is not before the Court at this time — it thus appears that

Defendants *did* accept the appeal and adjudicated it.  It follows that any documents Defendants

relied upon in that determination are part of the administrative record.  And Defendants concede

that, if the documents are part of the administrative record, "the fiduciary exception to the

attorney-client privilege would apply to the documents on the privilege log that post-date

Cohen's attorney's May 27, 2020 letter."  Defs.' Opp'n 5-6 n.6.

Accordingly, and without reaching the merits of the parties' disputes regarding the timing

and stages of the claims adjudication process, Defendants are required to produce any documents

that they have withheld pursuant only to the attorney-client privilege that are subject to the

fiduciary exception.  That leaves documents protected by the work-product doctrine, which

"protects documents prepared in anticipation of litigation from adversarial invasion absent a

showing of substantial need."  *Sovereign Cape Cod Invs. LLC v. Eugene A. Bartow Ins. Agency,*

*Inc.*, No. 20-CV-03902 (DGJ) (MW), 2022 WL 624553, at *1 (E.D.N.Y. Mar. 3, 2022).

Defendants contend that the fiduciary exception does not apply to the work-product doctrine and,

thus, that they should not be required to produce any documents protected by it.  Defs.' Opp'n 7-8.  The Second Circuit has not decided if the fiduciary exception applies to the work product doctrine, *see Pearlstein v. BlackBerry Ltd*., No. 13-CV-07060 (CM) (KHP), 2019 WL 1259382, at *11 (S.D.N.Y. Mar. 19, 2019), but, by definition, there are likely to be few, if any, documents that are both properly protected by the work product doctrine *and* subject to the fiduciary exception.  After all, the former protects documents prepared "in anticipation of litigation," but it does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."  *Rubie's Costume Co. v. Kangaroo Mfg., Inc.*, No. 16-CV-6517 (SJF), 2018 WL 4864833, at *2-3 (E.D.N.Y. Sept. 28, 2018).  The latter, meanwhile, applies to communications or documents "intended to assist in the administration of the plan."  *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997).  In most cases, therefore, "the normal limitations to the work-product rule and the limitations that would be imposed by the fiduciary exception, if it is applicable, are coextensive." *Martin v. Valley Nat. Bank of Arizona*, 140 F.R.D. 291, 327 (S.D.N.Y. 1991).

The Court reserves judgment on the unsettled legal question of whether the fiduciary exception applies to the work-product doctrine.  That is because, on the present record, it is not clear whether or to what extent the doctrine even applies.  In the ERISA context, much like the insurance context, courts have been especially careful in evaluating claims of work product protection, emphasizing that it would be "inappropriate to hold that the mere prospect of litigation renders communications between fiduciaries and counsel privileged, because the prospect of litigation is always present in decisions about whether to grant or deny benefits." *Black v. Bowes*, No. 05-CV-108 (GEL), 2006 WL 3771097, at *3 (S.D.N.Y. Dec. 21, 2006); *see also, e.g.*, *Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, 18-CV-126 (RA) (KHP), 2020 WL

2730944, at *7 (S.D.N.Y. May 6, 2020) (finding that it is "difficult to determine when work product protect applies" because insurance companies routinely "investigate claims while at the same time the potential for litigation is ever present").  Here, Defendants' privilege log lists "Attorney-Client Privileged; Attorney Work Product" for every one of the withheld documents, but it makes no attempt to distinguish which documents are protected by which.  *See* ECF No. 34-13 ("Priv. Log").  And Defendants have provided no other information from which the Court can conclude whether the documents were in fact created in anticipation of litigation or whether they instead relate to the adjudication of the benefits claim.  Given that Defendants bear the burden of establishing that the doctrine applies, *see, e.g.*, *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007), the Court would be on firm ground compelling production given this meager showing, *see, e.g.*, *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-CIV-5560 (RMB) (HBP), 2007 WL 473726, at *5 (S.D.N.Y. Feb. 14, 2007).  But the Court will give Defendants one opportunity to develop the record on the issue.

Accordingly, consistent with this Opinion and Order, Defendants shall, no later than **June 10, 2022**, serve on Cohen a revised privilege log identifying only those documents they believe can properly be withheld pursuant to the work product doctrine.  If Cohen contests the applicability of the doctrine to any particular document, the parties shall confer in good faith in an effort to resolve the dispute.  Absent a resolution, either party may seek relief from the Court by letter-motion in accordance with the procedures for discovery disputes set forth in Paragraph 2.C of the Court's Individual Rules and Practices for Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman.

**CONCLUSION**

For the reasons stated above, Cohen's motion for additional discovery is granted in part and denied in part.  Specifically, Cohen is permitted to conduct the two depositions described above; Defendants must promptly produce all documents protected only by the attorney-client privilege and subject to the fiduciary exception; and Defendants, to the extent they intend to continue to rely on the work product doctrine, must revise their privilege log as discussed above. In addition, the parties shall promptly reschedule the settlement conference with Magistrate Judge Cott that was adjourned pending this decision.  *See* ECF No. 27.

The Clerk of Court is directed to terminate ECF No. 34.

SO ORDERED.

Dated: May 27, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge

10